UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.M. SIGN, INC., individually and as the representative of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>GROUP C COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 08-cv-4521<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On July 11, 2008, Plaintiff, G.M. Sign, Inc., filed a class action lawsuit against Defendant, Group C Communications, Inc. ("Group C"), in the Circuit Court of Lake County. Plaintiff alleges that it received an unsolicited fax advertisement from Group C in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and that a group of similarly situated persons also received the same fax.

On August 11, 2008, the case was removed to this Court, which has jurisdiction under 28 U.S.C. §§ 1331 and 1441. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005). Plaintiff's Motion for Class Certification is presently before the Court.

## BACKGROUND

The TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Plaintiff characterizes such "junk faxing" as "advertising by

theft" because – unlike other forms of advertisements – the advertiser uses the recipient's machine, toner, paper, and time to conduct the advertising campaign.

Group C is a media company. In an effort to promote its annual "Total Facility Management Show" ("TFM Show"), Group C met with the Chicago Convention & Tourism Bureau ("CCTB") to discuss promotional strategies. The CCTB offered Group C lists of third-party Chicagoland entities to which Group C might promote its TFM Show. Group C purchased the CCTB lists, one of which included Plaintiff's fax number.

Group C then created an advertisement for the TFM Show and hired a company named Quick Link to fax those advertisements to the numbers on the CCTB lists. Through discovery, Plaintiff has determined that, between December 6, 2005, and January 26, 2006, Quick Link used the CCTB lists to transmit 37,932 faxes advertising its TFM Show. Plaintiff's expert, Robert Biggerstaff, reviewed business records provided by Quick Link and determined that the 37,932 faxes were transmitted on seven different dates to recipients listed in two database files. (Biggerstaff Report ¶¶ 15-21.) Susan Coene-Perl, Co-President of Group C, testified that those two files were purchased from CCTB in 2004. (Ex. C to Pl. Mot. ¶¶ 3-4.) Group C has not contested Biggerstaff's findings.

Plaintiff's Complaint alleges that Group C violated the TCPA by faxing these unsolicited advertisements to Plaintiff and others, and Plaintiff now seeks to certify the following class:

> All persons that: (1) during the period December 6, 2004, December 22, 2004, January 19, 2005, February 2, 2005, February 23, 2005, April 14, 2005, and January 26, 2006; (2) were sent one (or more) faxes identifying the website www.tfmshow.com and "The TFM Show"; and (3) had not previously consented to receiving such advertisements.

Plaintiff also alleges conversion under Illinois law.

## LEGAL STANDARD

"The Federal Rules of Civil Procedure provide the federal district court with broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (*Keele*) (citation and internal quotation marks omitted). In determining whether the class-action requirements are met, "a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (*Szabo*). The court should not, however, make any determination as to the underlying merits of the claims. *Id.* at 677. The party seeking class certification has the burden of demonstrating certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

To obtain class certification, Plaintiffs must demonstrate that the proposed classes satisfy all four elements of Federal Rule of Civil Procedure 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. The proposed class must also satisfy at least one of the three provisions under Rule 23(b). Here, Plaintiff

3

seeks certification under Rule 23(b)(3). A class should be certified under Rule 23(b)(3) only if the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Szabo*, 249 F.3d at 676.

## ANALYSIS

Group C argues that Plaintiff has failed to define a sufficiently ascertainable class and that Plaintiff's Motion should be denied for that reason alone. Group C does not challenge Plaintiff's assertion that the proposed class otherwise satisfies the requirements of Rule 23.

### *Ascertainability*

Although Rule 23 does not contain an express ascertainability requirement, the Seventh Circuit considers it to be a prerequisite to class certification. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citations omitted). A class must be identifiable as a class, and membership must be determinable through application of objective criteria. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987) (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)). Group C argues that Plaintiff's class is poorly defined, that it is not sufficiently identifiable due to certain preliminary issues, and that the Seventh Circuit expressly disfavors TCPA class actions. None of these arguments are persuasive.

Regarding Group C's contention that the class is poorly defined, Group C is correct in one respect: Plaintiff's use of the words "during the period" before a list of

4

seven separate dates is confusing. But this problem is easily remedied by replacing the words "during the period" with "on or about."

Group C then argues the definition is insufficient because it contains no requirement that Group C actually had sent the faxes at issue and no requirement that the class members actually owned the fax machines to which the advertisements were sent. But the identity of the sender can be circumstantially inferred from the content of the advertisements, which are clearly defined as "one (or more) faxes identifying the website www.tfmshow.com and 'The TFM Show'" – which Group C does not deny creating. As to Group C's argument that the definition should include language regarding ownership of the receiving machines, such language is not required by the statute and actually has the potential to invite multiple claims for each fax. *See Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *6 (N.D. Ill. Oct. 14, 2009) (*Holtzman*).

Group C's second major argument is that certain preliminary issues render the class not sufficiently identifiable at this preliminary stage. Group C asserts that Plaintiff has made no showing that each proposed class member was on one of the CCTB lists and that Plaintiff's proposed definition would also force the Court to consider the issue of whether each recipient consented to receiving advertisements from Group C. These arguments have no merit. First, Group C's argument regarding the CCTB lists is belied by the evidence. Plaintiff has specifically identified two fax-number databases at issue in this litigation, and Group C has admitted to purchasing those lists from the CCTB.

Second, Group C's unsupported speculation that some of the proposed class members may have independently consented does not warrant denial of class

certification. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (*Finish Thompson*) (stating that the defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented to receiving the fax") (citations omitted). "'[T]he question of consent may rightly be understood as a common question' and the possibility that some class members may have consented is not sufficient to defeat class certification." *Green v. Serv. Master on Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (*Green*) (quoting *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (*Hinman*)). Moreover, Group C admits it did not have permission. (E. Coene Dep. 59:12-23.)

Group C also contends that the Court would be forced to determine whether each individual transmission is exempt from liability pursuant to a TCPA provision addressing instances where the "sender obtained the number of the telephone facsimile machine through . . . a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." *See* 47 U.S.C. § 227(b)(1)(C)(ii). According to Group C, "It is a virtual certainty that some of the members of the CCTB list, all trade-show industry professionals, who received the facsimile broadcast were also members of a directory and thus voluntarily agreed to make available their facsimile number for distribution." (Def. Opp'n Br. 7.) This does not state a viable defense. The mere existence of a directory listing would be of no consequence; Group C would also have to prove it actually obtained the number from

that directory – as opposed to the CCTB lists. Moreover, the exemption also requires that the unsolicited advertisement contain a clear and conspicuous notice that the recipient can request not to receive further faxes. 47 U.S.C. § 227(b)(1)(C)(iii). Group C has not argued that its unsolicited faxes contained such a notice; indeed, it appears some of them did not. At any rate, the mere possibility that Group C may be able to assert this defense against some class members does not prevent the identification of an ascertainable class now.

Group C's final argument, that the Seventh Circuit disfavors class certification in TCPA cases, is incorrect. Group C cites four cases in which certification was denied. In the first case, *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (*Kenro*), the District Court for the Southern District of Indiana denied a proposed TCPA class, finding the proposed class definition would necessitate individual inquiries to determine whether each potential class member consented to receiving the advertisements at issue. But *Kenro* was decided twelve years ago; and since then, numerous courts, including at least one judge in this district, have expressly disagreed with *Kenro*'s holding. *See, e.g., Hinman*, 545 F. Supp. 2d at 806-07 (finding *Kenro*'s reasoning "unpersuasive" and declining to follow it). The *Hinman* court's analysis as to the diminished authority of *Kenro* is persuasive here.

In Group C's second case, *Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315-16 (N.D. Ill. 2008), the court denied the class but specifically based its decision on the unavailability of information sufficient to identify the recipients of the disputed fax. *See also Holtzman*, 2009 WL 3334909, at *6 ("[T]he factual

landscape in *Saf-T-Gard* counseled a different result because there was no list of numbers from which the parties (or the court) could reasonably identify potential class members."). Here, class members easily can be identified from the CCTB lists.

Group C's other two cases, *G.M. Sign, Inc. v. Franklin Bank*, No. 06 C 949, 2007 U.S. Dist. LEXIS 915112 (N.D. Ill. Dec. 13, 2007), and *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 12372 (N.D. Ill. Feb. 20, 2008), involved initial denials of motions to certify TCPA classes due to specific deficiencies not present here. And in both cases, the classes ultimately were certified. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *10 (N.D. Ill. May 27, 2008) (*Sadowski II*); *G.M. Sign, Inc. v. Franklin Bank, S.S.B*, No. 06 C 949, 2008 WL 3889950, at *7 (N.D. Ill. Aug. 20, 2008).

Indeed, numerous TCPA classes have been certified in this district based on class definitions very similar to the one at hand. *See, e.g., Hinman*, 545 F. Supp. 2d at 806-07; *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 143 (N.D. Ill. 2009); *Finish Thompson*, 2009 WL 2581324, at *8; *Green*, 2009 WL 1810769, at *3-4; *Holtzman*, 2009 WL 3334909, at *7.

"[B]y certifying a class of individuals who receive unsolicited faxes, [the court is] merely setting the boundaries of the class, not resolving the substantive issues." *Hinman*, 545 F. Supp. 2d at 807 (citation and internal quotation marks omitted). Here, those boundaries are set by precise, objective criteria, allowing identification of a defined set of potential class members. *Cf. Green*, 2009 WL 1810769, at *3 (finding that similar TCPA class definition provides "precise objective criteria that would be within the personal

8

knowledge of the potential class member") (quoting *Sadowski II*, 2008 WL 2224892, at *5).

Having found that Plaintiff has defined an ascertainable class, the Court now turns to the express requirements of Rule 23.

### *Numerosity*

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (citations omitted). Plaintiff's Complaint alleges Group C faxed an unsolicited advertisement to Plaintiff and more than 39 other recipients. (Compl. ¶¶ 11-13.) Based on information uncovered in discovery, Plaintiff now alleges those faxes were sent to thousands of persons. Individual joinder of thousands of persons would certainly be impractical. The numerosity requirement is satisfied.

### *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when there is "a common nucleus of operative fact." *Keele*, 149 F.R.D. at 594. The requirement is met when "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Id.*; *see also Hinman*, 545 F. Supp. 2d at 806-07 (certifying class in TCPA action). Here, Plaintiff alleges all similarly situated persons received the same advertisements and that all recipients were targeted as a result of their

9

inclusion in the CCTB lists. All claims arise from the same set of factual circumstances and under the same statute. The commonality element is satisfied.

*Typicality*

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). Here, Plaintiff alleges each proposed class member was similarly affected by the same series of faxed advertisements from Group C. The typicality element is satisfied.

*Adequacy of Representation*

Rule 23(a)'s final requirement is that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The burden of showing sufficient interest is relatively modest." *Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 295 (N.D. Ill. 2008). "Adequacy" is met when the representative's interests are not antagonistic to or in conflict with those of the other class members. *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

Plaintiff and the other class members seek statutory damages under the TCPA. Given the identity of claims between Plaintiff and the other class members, there appears to be no potential for conflicting interests. Plaintiff appears to understand its obligations

and the nature of its claims and has actively participated in the litigation to date. Thus, Plaintiff is adequately representing the class.

Plaintiff's counsel also appears prepared to prosecute the class action adequately and effectively. Plaintiff's attorneys are experienced lawyers who have been appointed as class counsel in numerous cases, including class actions asserted under the TCPA. They have already devoted significant effort to identifying and investigating potential claims, and they have affirmed their commitment to devoting the necessary staffing and financial resources necessary to represent this class.

### *Predominance and Superiority of Class Claims*

In addition to satisfying all of the elements set forth in Rule 23(a) – and the implied element of ascertainability – a party seeking certification of a class must demonstrate that the proposed class action is one of the three types identified in Rule 23(b). Here, Plaintiff argues for certification pursuant to Rule 23(b)(3), which requires Plaintiff to show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The common issue in this case involves Group C's alleged bulk sending of faxes advertising its TFM Show. All claims depend on proving Group C sent those faxes and that such conduct violates the TCPA. Although Group C makes vague assertions about potential individual issues of consent, these hypothetical defenses do not overcome the predominance of common questions of law and fact among potential class members.

Plaintiff has also demonstrated that a class action is a superior method of adjudicating the claims at issue. A large number of potential class members have the same claim under the same statute, and each claim has a small potential recovery. Class actions were designed for these types of claims. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.") (citation omitted). Rule 23(b)(3) is satisfied.

## CONCLUSION

Plaintiff has satisfied the requirements for class certification under Rule 23(a) and (b)(3), and Plaintiff has defined an ascertainable class of potential plaintiffs. Plaintiff's Motion for Class Certification is granted, and the law firms of Anderson + Wanca and Bock & Hatch, LLC are appointed as class counsel. The class will be defined as follows:

> All persons that: (1) on or about December 6, 2004, December 22, 2004, January 19, 2005, February 2, 2005, February 23, 2005, April 14, 2005, or January 26, 2006; (2) were sent one (or more) faxes identifying the website www.tfmshow.com and "The TFM Show"; and (3) had not previously consented to receiving such advertisements.

The parties shall meet and confer and submit to the Court a status report containing a proposed Class Action Notice and proposed methods and timetables for sending the Class Action Notice to members of the class. Plaintiff shall file the status report by March 25, 2010. A status hearing is scheduled for April 1, 2010.

Date: 2-25-10

JOHN W. DARRAH
United States District Court Judge